# EXHIBIT 1

Filing # 124443661 E-Filed 04/06/2021 08:20:31 PM

**IN THE CIRCUIT COURT FOR THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA**

LARRY KLAYMAN, ESQ.
7050 W. Palmetto Park Road
Boca Raton, Florida 33433-3426

      Plaintiff

    v.                          **Case No:**

ALM MEDIA LLC
Dba The National Law Journal
105 S. Narcissus Ave
West Palm Beach, FL 33401

      And

JACQUELINE THOMSEN
c/o 105 S. Narcissus Ave
West Palm Beach, FL 33401

---

**COMPLAINT**

Plaintiff LARRY KLAYMAN ("Plaintiff or Mr. Klayman") hereby files this action against ALM MEDIA LLC, dba THE NATIONAL LAW JOURNAL ("NLJ") and its reporter JACQUELINE THOMSEN ("Thomsen") for defamation per se, defamation and defamation by implication under Florida defamation law.

**JURISDICTION AND VENUE**

1. This is an action for defamation per se, defamation and defamation by implication for damages in excess of $30,000.00, exclusive of interest and costs.

NOT A CERTIFIED COPY

2.      Venue for this action is properly in Palm Beach, County, Florida as Plaintiff is a citizen of Florida also resides in this circuit and Defendants do substantial business and caused great damage to Mr. Klayman by virtue of their alleged defamation in this circuit.

3.      Defendant NLJ derives significant revenue from its substantial business in this circuit, which is broadcasting and written media which is projected into this circuit and its reporter, Defendant Thomsen, also does substantial and regular business in this circuit.

4.      Defendant NLJ has a permanent presence in this judicial circuit, as it has offices at 105 S. Narcissus Ave, West Palm Beach, FL 33401.

## THE PARTIES

5.      Plaintiff Larry Klayman is a citizen of Florida and resident of Palm Beach County. He is a public interest and private lawyer, an author, columnist and syndicated radio talk show host on Radio America, who depends on his credibility and reputation for honestly to earn a living and to present his message and further his mission to promote an honest government and legal system. Attached as Exhibit --- is Plaintiff's abbreviated biography which is incorporated herein by reference.

6.      Defendant NLJ has its headquarters in New York, NY, but has permanent offices in this judicial circuit at 105 S. Narcissus Ave, West Palm Beach, FL 33401.

7.      Defendant Thomsen, is a reporter for NLJ and his state of citizenship is unknown at this time.

## FACTS

8.      On March 26, 2021, Defendant NLJ published an article written by Defendant Thomsen titled, "*Larry Klayman Keeps Suing DC Bar Officials. They Want a Court Order Blocking More Lawsuits.*" (the "Thomsen Article"). Exhibit 2.

9.      This article was published in this judicial circuit, and was viewed by individuals in this judicial circuit. *See* Exhibit 2, which is incorporated herein by reference.

10.     The Thomsen Article makes numerous damaging statements of fact of and concerning Mr. Klayman. These false, malicious, and defamatory statements were made with actual malice, as Defendants knew that they were false, or at a minimum, acted with a reckless disregard for the truth.

11.     The Thomsen article is "cleverly but maliciously crafted" to harm Mr. Klayman in his trade and profession, as it omits key material facts intentionally in order the create the false implication that Mr. Klayman is simply harassing bar officials.

12.     Evidencing Defendants' actual malice, Mr. Klayman provided Defendants with all of the omitted information and material facts prior to the publication of the Thomsen Article, so therefore Defendants intentionally ignored the facts in order to create a defamatory "hit piece" of and concerning Mr. Klayman.

13.     First, the Thomsen Article fails to set forth the bases upon which Mr. Klayman claimed that both Bar officials and their disciplinary counsel do not have absolute immunity when they violate constitutional rights, based on Supreme Court and other precedent, nor does it explain why, with the DC Bar failing to police itself, Mr. Klayman had no choice but to file suit.

14.     By intentionally omitting this material information, the Thomsen Article creates the false implication that Mr. Klayman is only harassing Bar officials and disciplinary counsel, when the opposition is true.

15.     By intentionally omitting this material information, the Thomsen Article creates the false implication that Mr. Klayman is knowingly filing frivolous lawsuits, which severely harms his reputation as a public interest advocate and litigator, as well as in his private practice.

16.     Second, the Thomsen Article published that the "jihad" of Bar officials and their disciplinary counsel related only to Mr. Klayman, former AG Bill Barr, and Kellyanne Conway. However, Mr. Klayman previously provided to Defendant Thomsen verifiable information, also available readily on the internet and elsewhere, that many other conservatives and Republicans have been targeted. These targets also include but are not limited to Senators Ted, Cruz and Josh Hawley and former AG Rudy Giuliani, to name just a few.

17.     Also intentionally omitted was the material fact that, to the contrary David Kendall of Williams and Connolly, who assisted Hillary Clinton in the alleged destruction of 33,000 email, and persons like Marc Arias of Perkins Coie, who laundered money for Hillary Clinton to create a phony Steele dossier, which triggered the Russian collusion investigation of former Special Counsel Robert Mueller, all leftist Democrat attorneys, have been given a free pass by Bar officials and their disciplinary counsel.

18.     Intentionally omitting this material  information also creates the false impression that Mr. Klayman's claims are frivolous.

19.     Third, The Thomsen Article also omits material information provided to Defendants by Mr. Klayman about the similar case of J.P. and John Szymkowicz who were prosecuted without cause by Julia Porter, Deputy Bar Counsel and Bar Counsel generally for 13 years, nearly bankrupting them.

20.     Not coincidentally, J.P. is the only Republican member in DC government. And, then when an internal review was ordered after Porter apparently put up former Senior Assistant Bar Counsel, Michael Frisch, to defame the Szymkowiczs in blog postings, notwithstanding her repeated documented lies during the proceedings (as she has done with Mr. Klayman), the Bar disciplinary apparatus, now run by Mathew Kaiser ("Kaiser"), Chairman of the Board of

Professional Responsibility, failed to follow through with the previously ordered internal review of Porter's unethical conduct, which had been ordered by the prior Chairman of the Board Robert Bernius.

21.     The Thomsen Article also failed to detail Kaiser's donations to Biden, the Clintons and Obama, as well as scores of other leftist Democrats, and his writings with the leftist rag "Above the Law," trashing Donald Trump and supporting the "honesty" of Hillary Clinton. And, Kaiser also refused to do an internal review of the selection of communist Michael Tigar and Anthony Fitch to sit on a hearing committee concerning Mr. Klayman, as well as correct material errors and omission in the Board's report to the appellate court in another disciplinary proceeding.

22.     Fourth, the Thomsen Article intentionally omitted the reasons that Mr. Klayman had to sue Bar Counsel Hamilton Fox, Julia Porter and Lawrence Bloom, for sending correspondence to other courts and bar associations in other jurisdictions, where they have no jurisdiction, to vindictively interfere with his practice of law and his clients' interests.

23.     This intentional material omission also creates the false implication that Mr. Klayman's claims are all frivolous and with no merit.

24.     Fifth, the Thomsen Article presents only a one-sided portrayal of the Sataki disciplinary proceeding, and intentionally omits the substantive basis why the Sataki case by the Bar and its officials and disciplinary counsel is without merit, based on the admissions of Sataki herself, as well as sworn witness testimony, including Gloria Allred and others, including her union president and Judge Stanley Sporkin.

25. Instead, Defendants intentionally create the false implication that Mr. Klayman sexually harassed the woman which even the cooked and biased Hearing Committee did not find to be the case.

26. Sixth, the Thomsen Article falsely states that Mr. Klayman had a conflict of interest over representing Judicial Watch employees. This is not accurate, as he represented a woman, his surrogate mother, who Judicial Watch and Tom Fitton ripped off of her donation over the buying of a building, which 18 years later it still has not done (misappropriating 1.4 million dollars from all of the donors. This is confirmed at www.judicialwatch.org and reviewing the 990 tax returns.

27. Furthermore, Judicial Watch abandoned a client, Peter Paul who did 10 years in prison largely as a result, Mr. Klayman stepped in to represent the office manager and director of Judicial Watch in Miami, who was harassed by Judicial Watch as he was leaving to run for the U.S. Senate in Florida.

28. These material omissions create the false implication that Mr. Klayman had no ethical or legal basis to step in to help these persons, which is refuted by a letter written by Professor Rotunda that made it clear that I committed no ethics violations. This was provided to Defendants prior to the Thomsen Article.

29. Seventh, the Thomsen Article quotes only a cropped portion of the Honorable Ronald M. Gould's dissenting opinion in the Bundy matter, and intentionally omitted the key provision where he found that Mr. Klayman did not act dishonestly and disclosed all that he was required to disclose to the Honorable Gloria Navarro, before whom he sought *pro hac vice* entry to defend his client Cliven Bundy.

30.     This intentional material omission creates the false implication that Mr. Klayman had acted dishonestly and lied to Judge Navarro, which not even the majority on the Ninth Circuit had found.

31.     Eighth, the Thomsen Article falsely published that Mr. Klayman believes the entire legal community is working against him, which is false, and creates the false impression that Mr. Klayman is crazy or paranoid.

32.     Ninth, the Thomsen Article omits the fact that in the Sataki disciplinary matter, identical complaints were dismissed by The Florida and Pennsylvania Bars 9 years ago, but DC Bar officials and their disciplinary counsel resurrected an abandoned six year old identical complaint, to try to remove Mr. Klayman from the practice of law. This strongly supports Mr. Klayman's assertions that the Sataki disciplinary matter is without any merit, and omitting this material fact intentionally creates the false implication again that it is Mr. Klayman's claims that are without merit.

33.     Pursuant to Florida Statute §770.01, Mr. Klayman has notified Defendants in writing of the false, malicious and defamatory statements at issue at least five (5) days prior to the filing of this Complaint. Defendants have refused to correct and retract their false, malicious, and defamatory statements.

## First Cause of Action – Defamation
### Defendant NLJ

34.     Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs of the Complaint as if fully set forth herein.

35.     Acting in concert with the other Defendants, Defendant NLJ published malicious, false, misleading and defamatory statements of and concerning Plaintiff in this judicial district, nationwide, and worldwide.

36.     First, the Thomsen Article fails to set forth the bases upon which Mr. Klayman claimed that both Bar officials and their disciplinary counsel do not have absolute immunity when they violate constitutional rights, based on Supreme Court and other precedent, nor does it explain why, with the DC Bar failing to police itself, Mr. Klayman had no choice but to file suit.

37.     Second, the Thomsen Article published that the "jihad" of Bar officials and their disciplinary counsel related only to Mr. Klayman, former AG Bill Barr, and Kellyanne Conway. However, Mr. Klayman previously provided to Defendant Thomsen verifiable information, also available readily on the internet and elsewhere, that many other conservatives and Republicans have been targeted. These targets also include but are not limited to Senators Ted, Cruz and Josh Hawley and former AG Rudy Giuliani, to name just a few.

38.     Third, The Thomsen Article also omits material information provided to Defendants by Mr. Klayman about the similar case of J.P. and John Szymkowicz who were prosecuted without cause by Julia Porter, Deputy Bar Counsel and Bar Counsel generally for 13 years, nearly bankrupting them.

39.     Fourth, the Thomsen Article intentionally omitted the reasons that Mr. Klayman had to sue Bar Counsel Hamilton Fox, Julia Porter and Lawrence Bloom, for sending correspondence to other courts and bar associations in other jurisdictions, where they have no jurisdiction, to vindictively interfere with his practice of law and his clients' interests.

40.     Fifth, the Thomsen Article presents only a one-sided portrayal of the Sataki disciplinary proceeding, and intentionally omits the substantive basis why the Sataki case by the Bar and its officials and disciplinary counsel is without merit, based on the admissions of Sataki herself, as well as sworn witness testimony, including Gloria Allred and others, including her union president and Judge Stanley Sporkin.

41.     Sixth, the Thomsen Article falsely states that Mr. Klayman had a conflict of interest over representing Judicial Watch employees. This is not accurate, as he represented a woman, his surrogate mother, who Judicial Watch and Tom Fitton ripped off of her donation over the buying of a building, which 18 years later it still has not done (misappropriating 1.4 million dollars from all of the donors. This is confirmed at www.judicialwatch.org and reviewing the 990 tax returns.

42.     Seventh, the Thomsen Article quotes only a cropped portion of the Honorable Ronald M. Gould's dissenting opinion in the Bundy matter, and intentionally omitted the key provision where he found that Mr. Klayman did not act dishonestly and disclosed all that he was required to disclose to the Honorable Gloria Navarro, before whom he sought *pro hac vice* entry to defend his client Cliven Bundy.

43.     Eighth, the Thomsen Article falsely published that Mr. Klayman believes the entire legal community is working against him, which is false, and creates the false impression that Mr. Klayman is crazy or paranoid..

44.     Ninth, the Thomsen Article omits the fact that in the Sataki disciplinary matter, identical complaints were dismissed by The Florida and Pennsylvania Bars 9 years ago, but DC Bar officials and their disciplinary counsel resurrected an abandoned six year old identical complaint, to try to remove Mr. Klayman from the practice of law. This strongly supports Mr. Klayman's assertions that the Sataki disciplinary matter is without any merit, and omitting this material fact intentionally creates the false implication again that it is Mr. Klayman's claims that are without merit.

45.     These false and misleading statements were published with actual malice, as Defendant NLJ knew that they were false and misleading, or at a minimum acted with a reckless disregard for the truth.

46.     Plaintiff has been severely harmed and damaged by these false and misleading statements because they subjected him to hatred, distrust, ridicule, contempt, and disgrace.

47.     Plaintiff has been damaged by these false and misleading statements because they severely injured Plaintiff Klayman in his profession and businesses, as well as severely injured and damaged him personally, financially and in terms of his good will and reputation.

### Second Cause of Action – Defamation
#### *Defendant Thomsen*

48.     Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs of the Complaint as if fully set forth herein.

49.     Acting in concert with the other Defendants, Defendant Thomsen published malicious, false, misleading and defamatory statements of and concerning Plaintiff in this judicial circuit, nationwide, and worldwide.

50.     First, the Thomsen Article fails to set forth the bases upon which Mr. Klayman claimed that both Bar officials and their disciplinary counsel do not have absolute immunity when they violate constitutional rights, based on Supreme Court and other precedent, nor does it explain why, with the DC Bar failing to police itself, Mr. Klayman had no choice but to file suit.

51.     Second, the Thomsen Article published that the "jihad" of Bar officials and their disciplinary counsel related only to Mr. Klayman, former AG Bill Barr, and Kellyanne Conway. However, Mr. Klayman previously provided to Defendant Thomsen verifiable information, also available readily on the internet and elsewhere, that many other conservatives and Republicans

have been targeted. These targets also include but are not limited to Senators Ted, Cruz and Josh Hawley and former AG Rudy Giuliani, to name just a few.

52.     Third, The Thomsen Article also omits material information provided to Defendants by Mr. Klayman about the similar case of J.P. and John Szymkowicz who were prosecuted without cause by Julia Porter, Deputy Bar Counsel and Bar Counsel generally for 13 years, nearly bankrupting them.

53.     Fourth, the Thomsen Article intentionally omitted the reasons that Mr. Klayman had to sue Bar Counsel Hamilton Fox, Julia Porter and Lawrence Bloom, for sending correspondence to other courts and bar associations in other jurisdictions, where they have no jurisdiction, to vindictively interfere with his practice of law and his clients' interests.

54.     Fifth, the Thomsen Article presents only a one-sided portrayal of the Sataki disciplinary proceeding, and intentionally omits the substantive basis why the Sataki case by the Bar and its officials and disciplinary counsel is without merit, based on the admissions of Sataki herself, as well as sworn witness testimony, including Gloria Allred and others, including her union president and Judge Stanley Sporkin.

55.     Sixth, the Thomsen Article falsely states that Mr. Klayman had a conflict of interest over representing Judicial Watch employees. This is not accurate, as he represented a woman, his surrogate mother, who Judicial Watch and Tom Fitton ripped off of her donation over the buying of a building, which 18 years later it still has not done (misappropriating 1.4 million dollars from all of the donors. This is confirmed at www.judicialwatch.org and reviewing the 990 tax returns.

56.     Seventh, the Thomsen Article quotes only a cropped portion of the Honorable Ronald M. Gould's dissenting opinion in the Bundy matter, and intentionally omitted the key

provision where he found that Mr. Klayman did not act dishonestly and disclosed all that he was required to disclose to the Honorable Gloria Navarro, before whom he sought *pro hac vice* entry to defend his client Cliven Bundy.

57.     Eighth, the Thomsen Article falsely published that Mr. Klayman believes the entire legal community is working against him, which is false, and creates the false impression that Mr. Klayman is crazy or paranoid..

58.     Ninth, the Thomsen Article omits the fact that in the Sataki disciplinary matter, identical complaints were dismissed by The Florida and Pennsylvania Bars 9 years ago, but DC Bar officials and their disciplinary counsel resurrected an abandoned six year old identical complaint, to try to remove Mr. Klayman from the practice of law. This strongly supports Mr. Klayman's assertions that the Sataki disciplinary matter is without any merit, and omitting this material fact intentionally creates the false implication again that it is Mr. Klayman's claims that are without merit.

59.     These false and misleading statements were published with actual malice, as Defendant Thomsen knew that they were false and misleading, or at a minimum acted with a reckless disregard for the truth.

60.     Plaintiff has been severely harmed and damaged by these false and misleading statements because they subjected him to hatred, distrust, ridicule, contempt, and disgrace.

61.     Plaintiff has been damaged by these false and misleading statements because they severely injured Plaintiff Klayman in his profession and businesses, as well as severely injured and damaged him personally, financially and in terms of his good will and reputation.

**Third Cause of Action – Defamation Per Se**
*Defendant NLJ*

62.     Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs of the Complaint as if fully set forth herein.

63.     Acting in concert, Defendant NLJ as alleged herein, published numerous false, misleading and defamatory statements to severely harm and damage Plaintiff, which published the false statements about plaintiff that evidence characteristics or a condition are incompatible with the proper exercise of his lawful business, trade, profession or office, as well as personally.

64.     First, the Thomsen Article fails to set forth the bases upon which Mr. Klayman claimed that both Bar officials and their disciplinary counsel do not have absolute immunity when they violate constitutional rights, based on Supreme Court and other precedent, nor does it explain why, with the DC Bar failing to police itself, Mr. Klayman had no choice but to file suit.

65.     Second, the Thomsen Article published that the "jihad" of Bar officials and their disciplinary counsel related only to Mr. Klayman, former AG Bill Barr, and Kellyanne Conway. However, Mr. Klayman previously provided to Defendant Thomsen verifiable information, also available readily on the internet and elsewhere, that many other conservatives and Republicans have been targeted. These targets also include but are not limited to Senators Ted, Cruz and Josh Hawley and former AG Rudy Giuliani, to name just a few.

66.     Third, The Thomsen Article also omits material information provided to Defendants by Mr. Klayman about the similar case of J.P. and John Szymkowicz who were prosecuted without cause by Julia Porter, Deputy Bar Counsel and Bar Counsel generally for 13 years, nearly bankrupting them.

67.     Fourth, the Thomsen Article intentionally omitted the reasons that Mr. Klayman had to sue Bar Counsel Hamilton Fox, Julia Porter and Lawrence Bloom, for sending

correspondence to other courts and bar associations in other jurisdictions, where they have no jurisdiction, to vindictively interfere with his practice of law and his clients' interests.

68.     Fifth, the Thomsen Article presents only a one-sided portrayal of the Sataki disciplinary proceeding, and intentionally omits the substantive basis why the Sataki case by the Bar and its officials and disciplinary counsel is without merit, based on the admissions of Sataki herself, as well as sworn witness testimony, including Gloria Allred and others, including her union president and Judge Stanley Sporkin.

69.     Sixth, the Thomsen Article falsely states that Mr. Klayman had a conflict of interest over representing Judicial Watch employees. This is not accurate, as he represented a woman, his surrogate mother, who Judicial Watch and Tom Fitton ripped off of her donation over the buying of a building, which 18 years later it still has not done (misappropriating 1.4 million dollars from all of the donors. This is confirmed at www.judicialwatch.org and reviewing the 990 tax returns.

70.     Seventh, the Thomsen Article quotes only a cropped portion of the Honorable Ronald M. Gould's dissenting opinion in the Bundy matter, and intentionally omitted the key provision where he found that Mr. Klayman did not act dishonestly and disclosed all that he was required to disclose to the Honorable Gloria Navarro, before whom he sought *pro hac vice* entry to defend his client Cliven Bundy.

71.     Eighth, the Thomsen Article falsely published that Mr. Klayman believes the entire legal community is working against him, which is false, and creates the false impression that Mr. Klayman is crazy or paranoid..

72.     Ninth, the Thomsen Article omits the fact that in the Sataki disciplinary matter, identical complaints were dismissed by The Florida and Pennsylvania Bars 9 years ago, but DC

Bar officials and their disciplinary counsel resurrected an abandoned six year old identical complaint, to try to remove Mr. Klayman from the practice of law. This strongly supports Mr. Klayman's assertions that the Sataki disciplinary matter is without any merit, and omitting this material fact intentionally creates the false implication again that it is Mr. Klayman's claims that are without merit.

73.      These false, misleading and defamatory statements were published in this district and on the internet and elsewhere, domestically and for the entire world to see and hear and in so doing Defendants published false and misleading facts, *inter alia*, that Plaintiff's conduct, characteristics or a condition are incompatible with the proper exercise of his lawful business, trade, profession or office, as well as personally.

74.      These false and misleading statements were published with actual malice, as Defendant NLJ knew that they were false and misleading, and/or at a minimum acted with a reckless disregard for the truth.

75.      Defamation *per se* gives rise to the presumption that severe harm and damage has arisen by virtue of the malicious false and misleading statements.

76.      These malicious false, misleading, and defamatory statements are defamatory *per se* and these false and misleading statements severely harmed and damaged Plaintiff Klayman in his profession as a public interest and private advocate and litigator and as an author, columnist and radio and internet radio talk show and syndicated host, as well as personally. Plaintiff's reputation and good will were damages as was his financial well-being and ability to earn a living or himself and his family.

**Fourth Cause of Action – Defamation Per Se**
***Defendant Thomsen***

77.     Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs of the Complaint as if fully set forth herein.

78.     Acting in concert, Defendant Thomsen as alleged herein, published numerous false, misleading and defamatory statements to severely harm and damage Plaintiff, which published the false statements about plaintiff that evidence characteristics or a condition are incompatible with the proper exercise of his lawful business, trade, profession or office, as well as personally.

79.     First, the Thomsen Article fails to set forth the bases upon which Mr. Klayman claimed that both Bar officials and their disciplinary counsel do not have absolute immunity when they violate constitutional rights, based on Supreme Court and other precedent, nor does it explain why, with the DC Bar failing to police itself, Mr. Klayman had no choice but to file suit.

80.     Second, the Thomsen Article published that the "jihad" of Bar officials and their disciplinary counsel related only to Mr. Klayman, former AG Bill Barr, and Kellyanne Conway. However, Mr. Klayman previously provided to Defendant Thomsen verifiable information, also available readily on the internet and elsewhere, that many other conservatives and Republicans have been targeted. These targets also include but are not limited to Senators Ted, Cruz and Josh Hawley and former AG Rudy Giuliani, to name just a few.

81.     Third, The Thomsen Article also omits material information provided to Defendants by Mr. Klayman about the similar case of J.P. and John Szymkowicz who were prosecuted without cause by Julia Porter, Deputy Bar Counsel and Bar Counsel generally for 13 years, nearly bankrupting them.

82.     Fourth, the Thomsen Article intentionally omitted the reasons that Mr. Klayman had to sue Bar Counsel Hamilton Fox, Julia Porter and Lawrence Bloom, for sending

correspondence to other courts and bar associations in other jurisdictions, where they have no jurisdiction, to vindictively interfere with his practice of law and his clients' interests.

83.     Fifth, the Thomsen Article presents only a one-sided portrayal of the Sataki disciplinary proceeding, and intentionally omits the substantive basis why the Sataki case by the Bar and its officials and disciplinary counsel is without merit, based on the admissions of Sataki herself, as well as sworn witness testimony, including Gloria Allred and others, including her union president and Judge Stanley Sporkin.

84.     Sixth, the Thomsen Article falsely states that Mr. Klayman had a conflict of interest over representing Judicial Watch employees. This is not accurate, as he represented a woman, his surrogate mother, who Judicial Watch and Tom Fitton ripped off of her donation over the buying of a building, which 18 years later it still has not done (misappropriating 1.4 million dollars from all of the donors. This is confirmed at www.judicialwatch.org and reviewing the 990 tax returns.

85.     Seventh, the Thomsen Article quotes only a cropped portion of the Honorable Ronald M. Gould's dissenting opinion in the Bundy matter, and intentionally omitted the key provision where he found that Mr. Klayman did not act dishonestly and disclosed all that he was required to disclose to the Honorable Gloria Navarro, before whom he sought *pro hac vice* entry to defend his client Cliven Bundy.

86.     Eighth, the Thomsen Article falsely published that Mr. Klayman believes the entire legal community is working against him, which is false, and creates the false impression that Mr. Klayman is crazy or paranoid..

87.     Ninth, the Thomsen Article omits the fact that in the Sataki disciplinary matter, identical complaints were dismissed by The Florida and Pennsylvania Bars 9 years ago, but DC

Bar officials and their disciplinary counsel resurrected an abandoned six year old identical complaint, to try to remove Mr. Klayman from the practice of law. This strongly supports Mr. Klayman's assertions that the Sataki disciplinary matter is without any merit, and omitting this material fact intentionally creates the false implication again that it is Mr. Klayman's claims that are without merit.

88.     These false, misleading and defamatory statements were published in this district and on the internet and elsewhere, domestically and for the entire world to see and hear and in so doing Defendants published false and misleading facts, *inter alia*, that Plaintiff's conduct, characteristics or a condition are incompatible with the proper exercise of his lawful business, trade, profession or office, as well as personally.

89.     These false and misleading statements were published with actual malice, as Defendant Thomsen knew that they were false and misleading, and/or at a minimum acted with a reckless disregard for the truth.

90.     Defamation *per se* gives rise to the presumption that severe harm and damage has arisen by virtue of the malicious false and misleading statements.

91.     These malicious false, misleading, and defamatory statements are defamatory *per se* and these false and misleading statements severely harmed and damaged Plaintiff Klayman in his profession as a public interest and private advocate and litigator and as an author, columnist and radio and internet radio talk show and syndicated host, as well as personally. Plaintiff's good will and reputation and financial well-being and ability to earn a living for himself and his family were also damaged.

**Fifth Cause of Action - Defamation by Implication**
*Defendant NLJ*

92.     Plaintiff re-alleges and incorporates by reference the allegations in the preceding

paragraphs of the Complaint as if fully set forth herein.

93.     Acting in concert with the other Defendants, Defendant NLJ published numerous false, misleading and defamatory statements about Plaintiff, as set forth in the preceding paragraphs.

94.     First, the Thomsen Article fails to set forth the bases upon which Mr. Klayman claimed that both Bar officials and their disciplinary counsel do not have absolute immunity when they violate constitutional rights, based on Supreme Court and other precedent, nor does it explain why, with the DC Bar failing to police itself, Mr. Klayman had no choice but to file suit.

95.     Second, the Thomsen Article published that the "jihad" of Bar officials and their disciplinary counsel related only to Mr. Klayman, former AG Bill Barr, and Kellyanne Conway. However, Mr. Klayman previously provided to Defendant Thomsen verifiable information, also available readily on the internet and elsewhere, that many other conservatives and Republicans have been targeted. These targets also include but are not limited to Senators Ted, Cruz and Josh Hawley and former AG Rudy Giuliani, to name just a few.

96.     Third, The Thomsen Article also omits material information provided to Defendants by Mr. Klayman about the similar case of J.P. and John Szymkowicz who were prosecuted without cause by Julia Porter, Deputy Bar Counsel and Bar Counsel generally for 13 years, nearly bankrupting them.

97.     Fourth, the Thomsen Article intentionally omitted the reasons that Mr. Klayman had to sue Bar Counsel Hamilton Fox, Julia Porter and Lawrence Bloom, for sending correspondence to other courts and bar associations in other jurisdictions, where they have no jurisdiction, to vindictively interfere with his practice of law and his clients' interests.

98.     Fifth, the Thomsen Article presents only a one-sided portrayal of the Sataki disciplinary proceeding, and intentionally omits the substantive basis why the Sataki case by the Bar and its officials and disciplinary counsel is without merit, based on the admissions of Sataki herself, as well as sworn witness testimony, including Gloria Allred and others, including her union president and Judge Stanley Sporkin.

99.     Sixth, the Thomsen Article falsely states that Mr. Klayman had a conflict of interest over representing Judicial Watch employees. This is not accurate, as he represented a woman, his surrogate mother, who Judicial Watch and Tom Fitton ripped off of her donation over the buying of a building, which 18 years later it still has not done (misappropriating 1.4 million dollars from all of the donors. This is confirmed at www.judicialwatch.org and reviewing the 990 tax returns.

100.    Seventh, the Thomsen Article quotes only a cropped portion of the Honorable Ronald M. Gould's dissenting opinion in the Bundy matter, and intentionally omitted the key provision where he found that Mr. Klayman did not act dishonestly and disclosed all that he was required to disclose to the Honorable Gloria Navarro, before whom he sought *pro hac vice* entry to defend his client Cliven Bundy.

101.    Eighth, the Thomsen Article falsely published that Mr. Klayman believes the entire legal community is working against him, which is false, and creates the false impression that Mr. Klayman is crazy or paranoid..

102.    Ninth, the Thomsen Article omits the fact that in the Sataki disciplinary matter, identical complaints were dismissed by The Florida and Pennsylvania Bars 9 years ago, but DC Bar officials and their disciplinary counsel resurrected an abandoned six year old identical complaint, to try to remove Mr. Klayman from the practice of law. This strongly supports Mr.

Klayman's assertions that the Sataki disciplinary matter is without any merit, and omitting this material fact intentionally creates the false implication again that it is Mr. Klayman's claims that are without merit.

103.   These false, misleading and defamatory statements were published on the internet and published and republished elsewhere in this circuit, domestically and for the entire world to see and hear.

104.   These false and misleading statements were published with actual malice, as Defendants knew that they were false and misleading, and/or at a minimum acted with a reckless disregard for the truth.

105.   These statements created the false and misleading implication that Plaintiff Klayman does not respect the law or the Courts, among other false and misleading statements as pled in the preceding paragraphs.

106.   Plaintiff has been severely harmed and damaged by these false and misleading statements because they subject him to hatred, distrust, ridicule, contempt, and disgrace.

107.   Plaintiff has been damaged by these malicious false and misleading statements because the statements severely harmed and damaged Plaintiff in his professions as public interest and private practitioner lawyers and radio talk show hosts, whose credibility is the most important trait, as well as personally. Plaintiff was damaged in his good will and reputation and his financial well-being and ability to earn a living for himself and his family.

### Sixth Cause of Action - Defamation by Implication
### *Defendant Thomsen*

108.   Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs of the Complaint as if fully set forth herein.

109.   Acting in concert with the other Defendants, Defendant Thomsen published

numerous false, misleading and defamatory statements about Plaintiff, as set forth in the preceding paragraphs.

110.   First, the Thomsen Article fails to set forth the bases upon which Mr. Klayman claimed that both Bar officials and their disciplinary counsel do not have absolute immunity when they violate constitutional rights, based on Supreme Court and other precedent, nor does it explain why, with the DC Bar failing to police itself, Mr. Klayman had no choice but to file suit.

111.   Second, the Thomsen Article published that the "jihad" of Bar officials and their disciplinary counsel related only to Mr. Klayman, former AG Bill Barr, and Kellyanne Conway. However, Mr. Klayman previously provided to Defendant Thomsen verifiable information, also available readily on the internet and elsewhere, that many other conservatives and Republicans have been targeted. These targets also include but are not limited to Senators Ted, Cruz and Josh Hawley and former AG Rudy Giuliani, to name just a few.

112.   Third, The Thomsen Article also omits material information provided to Defendants by Mr. Klayman about the similar case of J.P. and John Szymkowicz who were prosecuted without cause by Julia Porter, Deputy Bar Counsel and Bar Counsel generally for 13 years, nearly bankrupting them.

113.   Fourth, the Thomsen Article intentionally omitted the reasons that Mr. Klayman had to sue Bar Counsel Hamilton Fox, Julia Porter and Lawrence Bloom, for sending correspondence to other courts and bar associations in other jurisdictions, where they have no jurisdiction, to vindictively interfere with his practice of law and his clients' interests.

114.   Fifth, the Thomsen Article presents only a one-sided portrayal of the Sataki disciplinary proceeding, and intentionally omits the substantive basis why the Sataki case by the Bar and its officials and disciplinary counsel is without merit, based on the admissions of Sataki

herself, as well as sworn witness testimony, including Gloria Allred and others, including her union president and Judge Stanley Sporkin.

115.    Sixth, the Thomsen Article falsely states that Mr. Klayman had a conflict of interest over representing Judicial Watch employees. This is not accurate, as he represented a woman, his surrogate mother, who Judicial Watch and Tom Fitton ripped off of her donation over the buying of a building, which 18 years later it still has not done (misappropriating 1.4 million dollars from all of the donors. This is confirmed at www.judicialwatch.org and reviewing the 990 tax returns.

116.    Seventh, the Thomsen Article quotes only a cropped portion of the Honorable Ronald M. Gould's dissenting opinion in the Bundy matter, and intentionally omitted the key provision where he found that Mr. Klayman did not act dishonestly and disclosed all that he was required to disclose to the Honorable Gloria Navarro, before whom he sought *pro hac vice* entry to defend his client Cliven Bundy.

117.    Eighth, the Thomsen Article falsely published that Mr. Klayman believes the entire legal community is working against him, which is false, and creates the false impression that Mr. Klayman is crazy or paranoid..

118.    Ninth, the Thomsen Article omits the fact that in the Sataki disciplinary matter, identical complaints were dismissed by The Florida and Pennsylvania Bars 9 years ago, but DC Bar officials and their disciplinary counsel resurrected an abandoned six year old identical complaint, to try to remove Mr. Klayman from the practice of law. This strongly supports Mr. Klayman's assertions that the Sataki disciplinary matter is without any merit, and omitting this material fact intentionally creates the false implication again that it is Mr. Klayman's claims that are without merit.

119.    These false, misleading and defamatory statements were published on the internet and published and republished elsewhere in this judicial circuit, domestically and for the entire world to see and hear.

120.    These false and misleading statements were published with malice, as Defendants knew that they were false and misleading, and/or at a minimum acted with a reckless disregard for the truth.

121.    These statements created the false and misleading implication that Plaintiff Klayman does not respect the law or the Courts, among other false and misleading statements as pled in the preceding paragraphs.

122.    Plaintiff has been severely harmed and damaged by these false and misleading statements because they subject him to hatred, distrust, ridicule, contempt, and disgrace.

123.    Plaintiff has been damaged by these malicious false and misleading statements because the statements severely harmed and damaged Plaintiff in his professions as pubic interest and private practitioner lawyers and radio talk show hosts, whose credibility is the most important trait, as well as personally. Plaintiff was damaged in his good will and reputation and his financial well-being and ability to earn a living for himself and his family.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

a.      Awarding Plaintiff compensatory including actual, consequential, incidental for malicious tortious concerted conduct, jointly and severally, in an amount to be determined at by a jury at trial for  damages in excess of $20,000,000.00  caused to his personal, and professional reputations and good will in his trades and professions, as well as past and prospective financial losses, personally and professionally

b.    Granting such other relief as the Court deems appropriate and necessary.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL CLAIMS SO TRIABLE**.

Dated:  April 6, 2021                                        Respectfully Submitted,


_/s/ Larry Klayman_
Larry Klayman, Esq.
Florida Bar. No. 246220
7050 W. Palmetto Park Rd
Boca Raton FL 33433
Telephone: 561-558-5336
Email: leklayman@gmail.com

_PLAINTIFF PRO SE_



# EXHIBIT 1

# ABOUT LARRY KLAYMAN

Larry Klayman, founder of Judicial Watch and Freedom Watch, is known for his strong public interest advocacy in furtherance of ethics in government and individual freedoms and liberties. During his tenure at Judicial Watch, he obtained a court ruling that Bill Clinton committed a crime, the first lawyer ever to have done so against an American president. Larry became so famous for fighting corruption in the government and the legal profession that the NBC hit drama series "West Wing" created a character after him: <u>Harry Klaypool of Freedom Watch</u>. His character was played by actor John Diehl.

In 2004, Larry ran for the U.S. Senate as a Republican in Florida's primary. After the race ended, he founded Freedom Watch.

Larry graduated from Duke University with honors in political science and French literature. Later, he received a law degree from Emory University. During the administration of President Ronald Reagan, Larry was a Justice Department prosecutor and was on the trial team that succeeded in breaking up the telephone monopoly of AT&T, thereby creating competition in the telecommunications industry.

Between Duke and Emory, Larry worked for U.S. Senator Richard Schweiker (R-Pa.) during the Watergate era. He has also studied abroad and was a stagiaire for the Commission of the European Union in its Competition Directorate in Brussels, Belgium. During law school, Larry also worked for the U.S. International Trade Commission in Washington, D.C.

Larry speaks four languages—English, French, Italian, and Spanish—and is an international lawyer, among his many areas of legal expertise and practice.

The author of two books, *Fatal Neglect* and *Whores: Why and How I Came to Fight the Establishment,* Larry has a third book in the works dealing with the breakdown of our political and legal systems. His current book, *Whores,* is on now sale at WND.com, Amazon.com, BarnesandNoble.com, Borders.com, and all major stores and booksellers.

Larry is a frequent commentator on television and radio, as well as a weekly columnist, on Friday, for WND.com. He also writes a regular blog for Newsmax called "Klayman's Court."

Larry has been credited as being the inspiration for the Tea Party movement. (See "<u>Larry Klayman - The One Man TEA Party</u>," by Dr. Richard Swier, http://fwusa.org/KFA)



**Support the work of Freedom Watch at <u>www.FreedomWatchUSA.org</u>**



# EXHIBIT 2

# THE NATIONAL LAW JOURNAL

**NOT FOR REPRINT**

🖶 Click to print or Select '**Print**' in your browser menu to print this document.

Page printed from: *https://www.law.com/nationallawjournal/2021/03/16/larry-klayman-keeps-suing-dc-bar-officials-they-want-a-court-order-blocking-more-lawsuits/*

# Larry Klayman Keeps Suing DC Bar Officials. They Want a Court Order Blocking More Lawsuits

Akin Gump attorneys say they've spent more than 1,000 hours defending the bar officials from Klayman's suits. Klayman claims he has no choice but to sue.

By Jacqueline Thomsen | March 16, 2021



**Attorney Larry Klayman speaks to reporters outside the E. Barrett Prettyman Federal Courthouse in Washington, D.C., in 2015. Photo: Andrew Harnik/AP**

Conservative lawyer Larry Klayman is waging a one-man war against the D.C. Bar for suspending him from practicing law, a fight that's now elicited a request for a court order to block future suits.

Since 2018, Klayman has filed six (https://drive.google.com/file/d/18wq5na9J71NoIQMy-KLGTderC6pxWfGC/view?usp=sharing) lawsuits (https://drive.google.com/file/d/1EcUn9yhm3Nvmzg2_susRtPDwhpTM5zF8/view?usp=sharing) in (https://drive.google.com/file/d/1-oHcHcRfu_NVE8etYGgps1BbV7bsEyKp/view?usp=sharing) five (https://drive.google.com/file/d/118BoVt9SFJXiqTSwTpNR08AHap6Wvg6d/view?usp=sharing) different (https://drive.google.com/file/d/1Fua0ELCqJjBOoOIplZYcNkYM8k9xY3Zx/view?usp=sharing) courts

(https://drive.google.com/file/d/19NCC3TB4nGOCzQ74AyYhRzBOMtubx9X5/view?usp=sharing) against bar officials, disciplinary counsel and the bar itself. He alleges a political "jihad" against him over bar proceedings, one of which has culminated in his current interim suspension.

Most of the suits are filed in federal court, and were either initially filed in D.C. or ordered transferred there. Two judges so far have dismissed (https://drive.google.com/file/d/1Ay5rh8PrtKCm9Zb6yWwynSXFMbTxKmPl/view?usp=sharing) three of the suits, finding (https://drive.google.com/file/d/1x8ADnnDJF5qf7tgYbBr_O4rUjoxyaPER/view?usp=sharing) D.C. bar officials and the office of disciplinary counsel are immune from lawsuits over their official actions. At least one judge has granted sanctions (https://drive.google.com/file/d/1OTWwSjILaRRiX5OHQyVhj2qQDpp5RoS1/view?usp=sharing) against Klayman for the litigation.

Klayman alleged in an email that the D.C. Bar is pursuing "a literal jihad to eliminate conservative and Republican advocates from the practice of law," pointing to ethics complaints against figures like Kellyanne Conway and former Attorney General William Barr. "The cancel culture of today's very partisan world thus extends beyond Big Tech and the other forces of the left," he said. No public action has yet been taken on those complaints.

Now, D.C. Bar officials are asking a federal judge to issue an order blocking Klayman from filing any more federal lawsuits against them or others tied to the board's disciplinary processes without first getting permission from a court.

In a motion (https://drive.google.com/file/d/1ZXwVc6NdTZ2JB2AnEtVi3O5tuBPz6fSZ/view?usp=sharing) filed last month, Akin Gump Strauss Hauer & Feld attorneys said the disciplinary counsel sued by the conservative lawyer—Julia Porter, Hamilton Fox and Lawrence Bloom—are the subject of "harassment." "Mr. Klayman is the embodiment of a vexatious litigant," the brief states.

Pointing to prior court rulings against Klayman's suits, the lawyers argued that by continuing to file the complaints, the attorney "has chosen to ignore and thereby disrespect each of these courts." They allege the suits have "the sole and obvious purpose of harassing and abusing Office of Disciplinary Counsel."

One affidavit from Akin Gump associate Samantha Block claims the firm has spent more than 1,000 hours on its pro bono work for the D.C. Bar and related officials as a result of Klayman's lawsuits. The firm has also accumulated $28,990 in out-of-pocket expenses over the work, the filing states. The Akin Gump attorneys declined to comment for this story.

On March 11, attorneys for Matt Kaiser—chair of the D.C. Board on Professional Responsibility—asked to join the motion. The brief (https://drive.google.com/file/d/190Vl2V-KRkfEdqIohFpo2XdtJb5v4LMz/view?usp=sharing) from Buckley lawyers Benjamin Klubes and Preston Burton acknowledged that a suit filed by Klayman in California but since transferred to D.C. was the first to name Kaiser, but states it "relies on the same allegations as the prior lawsuits lodged against the other defendants."

"Plaintiff has a well-documented history of vexatious litigation and has demonstrated with his conduct toward defendants Porter, Fox, and Bloom that he intends to continue a relentless campaign of harassment against them. He has now added Mr. Kaiser to his list of targets for additional harassment," the brief reads. Klubes, managing partner for Buckley, did not return a request for comment.

Klayman has until the end of April to respond to the motion for a permanent injunction.

Klayman was suspended (https://www.dcbar.org/Attorney-Discipline/Disciplinary-Decisions/Disciplinary-Case?docketno=17-BD-063) on an interim basis in early January as a final decision is made over a report that found he developed romantic feelings for a woman he was representing in a sexual harassment complaint.

The Board on Professional Responsibility last October recommended (//www.dcbar.org/ServeFile/GetDisciplinaryActionFile?fileName=LarryEKlayman17BD063.pdf) Klayman be suspended for 18 months and prove his fitness to practice law again over the findings. Klayman has spoken out against that conclusion by singling out (//drive.google.com/file/d/1ynOs34e8-M4P2yz91e-m9GUJ4sQbVxbl/view?usp=sharing) one of the members on his hearing committee—which had proposed (//www.dcbar.org/ServeFile/GetDisciplinaryActionFile?fileName=HCLarryEKlayman02811.pdf) a 33-month suspension—and arguing officials waited years to pursue the complaint against him.

He was previously suspended from practicing law for three months after a hearing committee (//www.dcbar.org/ServeFile/GetDisciplinaryActionFile?fileName=HCLarryEKlayman04808.pdf) in 2018 found that Klayman had a "prior client" conflict over his representation of Judicial Watch employees in separate suits against the group, which he founded and previously served as general counsel. The board agreed (//www.dcbar.org/ServeFile/GetDisciplinaryActionFile?fileName=LarryEKlayman4808.pdf) with the committee's recommendation of the 90-day suspension, but rejected a fitness requirement. A panel on the D.C. Court of Appeals last year ordered (//www.dcbar.org/ServeFile/GetDisciplinaryActionFile?fileName=18-BG-0100.pdf) the suspension.

He faced another ethics probe over his initial efforts to represent Cliven Bundy over the 2014 stand-off with law enforcement. A district judge rejected Klayman's petition to appear in the court, saying the attorney was not open about the disciplinary process in the Judicial Watch probe that was ongoing in D.C. at the time.

The U.S. Court of Appeals for the Ninth Circuit in 2016 issued a divided ruling (//cdn.ca9.uscourts.gov/datastore/opinions/2016/10/28/16-72275.pdf) in that case that affirmed the lower court's finding. "Klayman has a reputation as a vigorous litigator, but this is not a flattering record, and not one that the district court should ignore," Judge Jay Bybee wrote in the court's main opinion. Judge Ronald Gould dissented, saying that he does "not dismiss lightly the district court's ethical concerns regarding Klayman, especially the issue of candor" but that "the need to provide a vigorous defense for Bundy is a superordinate concern." Klayman later represented Bundy in his criminal case before the Ninth Circuit.

In the D.C. probe of Klayman's conduct in the Bundy case, an ad hoc hearing committee in July 2019 said (https://drive.google.com/file/d/1lekjkQGLO8BWzKouBBOkC843wgzlPPw0/view?usp=sharing) after a hearing that it "could not make a preliminary finding" that disciplinary counsel proved Klayman committed any rule violations. A panel heard arguments on the alleged ethics violations in the fall—Klayman said no further action has taken place since then.

In his lawsuits, which touch on all three of the ethics probes, Klayman contends he's being unfairly targeted for his political views and past legal complaints against prominent Democrats.

"It is apparent that defendants' politically and gender based attempts to remove plaintiff Klayman from the practice of law stem from his conservative, pro-Trump public and private advocacy as the founder of both Judicial Watch and now Freedom Watch, which they abhor," Klayman alleged in the complaint (https://drive.google.com/file/d/19NCC3TB4nGOCzQ74AyYhRzBOMtubx9X5/view) he filed in California, echoing claims he made in the other lawsuits. "While this regrettably is a sign of the times in the highly charged and vicious political and ideological atmosphere of the nation's capital, this conduct is both unethical and illegal nevertheless."

Klayman rose to prominence during the Clinton administration, as he peppered Democratic officials with civil lawsuits. He founded the conservative group Judicial Watch and later went on to form a new group, Freedom Watch—named after a fictional organization from the television series "The West Wing," in which a character molded after Klayman was depicted.

NOT A CERTIFIED COPY

Klayman has maintained the bar complaints are an effort to stop him from practicing law in D.C. He's argued he is often the last resort for clients who are otherwise unable to find legal representation, and blocking him from practicing law would also prevent them from pursuing their claims.

The attorney has at times drawn disdain from those he's sued and skepticism (https://www.law.com/nationallawjournal/2019/10/02/come-on-dc-judge-exasperated-as-larry-klayman-lobs-legal-attacks-on-mueller/) from the judges presiding over those cases—he's alleged bias on the part of judges who have issued rulings against him, and two judges (https://casetext.com/case/macdraw-inc-v-cit-group-equip-fin-inc#p37) have banned him (https://caselaw.findlaw.com/us-federal-circuit/1139941.html) from appearing before them over his conduct.

Klayman notched a win (https://www.nytimes.com/2013/12/18/us/politics/larry-klayman-plaintiff-in-nsa-case-savors-victory.html) in 2013 when U.S. District Judge Richard Leon ruled the NSA's post-9/11 collection of Americans' phone records was likely unconstitutional; the preliminary injunction issued by the judge was overturned by a D.C. Circuit panel, but they allowed the case to proceed. After more rulings back-and-forth between the trial judge and the appeals court, Leon dismissed (https://arstechnica.com/tech-policy/2017/11/judge-dismisses-lawsuits-filed-back-in-2013-over-nsa-bulk-surveillance/) the case in 2017 because the bulk collection program had ended. The D.C. Circuit affirmed (https://drive.google.com/file/d/1Crsp4qbOx0rfMYWQT3isKMsdyWQeCGgY/view?usp=sharing) that ruling in 2019.

He's also received support from other judges and ethics experts: U.S. District Senior Judge Royce Lamberth of the District of Columbia testified (//www.dcbar.org/ServeFile/GetDisciplinaryActionFile?fileName=LarryEKlayman4808.pdf) on Klayman's behalf during the Judicial Watch ethics probe, and the late legal ethics expert Ronald Rotunda also supported Klayman.

Klayman has said his reputation as a thorn in the side of powerful figures has also made him a target for harassment.

On March 12, Klayman said he plans to run for president of the D.C. Bar in order to "clean out the rats nest over there."

Klayman has disagreed with judges' rulings against him in his prior lawsuits over the D.C. disciplinary actions, and has contended the legal community is largely working in concert against him. He noted that at least one of the cases, which was filed in D.C. Superior Court, is currently on appeal.

Three of the lawsuits tied to the D.C. Bar are currently pending before federal trial judges in D.C. One of the cases was dismissed by a D.C. Superior Court judge, and is now before the D.C. Court of Appeals. Two of the appeals have been rejected (https://drive.google.com/file/d/1gBsZgvfVg1YLMMJFFkOfu8Xt9Zbiqc70/view?usp=sharing) by the D.C. Circuit, which affirmed the rulings (https://drive.google.com/file/d/1x8ADnnDJF5qf7tgYbBr_O4rUjoxyaPER/view?usp=sharing) against (https://drive.google.com/file/d/1Ay5rh8PrtKCm9Zb6yWwynSXFMbTxKmPl/view?usp=sharing) Klayman made by U.S. District Judge Randolph Moss in two separate cases.

Klayman has also sought (//www.courtlistener.com/recap/gov.uscourts.dcd.200305/gov.uscourts.dcd.200305.25.0_1_1.pdf) to have his cases heard by a judge other than Moss, citing (//www.courtlistener.com/recap/gov.uscourts.dcd.198286/gov.uscourts.dcd.198286.4.0_2.pdf) the judge's prior experience working in the Clinton and Obama administrations and political contributions he made before joining the bench. Moss rejected (//www.courtlistener.com/recap/gov.uscourts.dcd.198286/gov.uscourts.dcd.198286.5.0.pdf) the

3/31/2021    Larry Klayman Keeps Suing DC Bar Officials: They Want a Court Order to Download More Lawsuits | New Jersey Law Journal

Case 9:21-cv-80839-XXXX Document 12 Entered on FLSD Docket 05/07/2021 Page 34 of 43

(//www.courtlistener.com/recap/gov.uscourts.dcd.200305/gov.uscourts.dcd.200305.29.0.pdf) motions (//www.courtlistener.com/recap/gov.uscourts.dcd.198286/gov.uscourts.dcd.198286.40.0.pdf) to recuse himself, and the D.C. Circuit sided with the judge.

Recently, Klayman's litigation has started to target the judges behind the disciplinary decisions. Last month he sued (https://drive.google.com/file/d/1FuEwJM8sOh8Q83Xi21IC5m-Czl52FC77/view?usp=sharing) all of the judges on the D.C. Court of Appeals over the interim suspension of his ability to practice law. In the complaint, he alleges the court discriminated against him and that he had no choice but to file suit.

U.S. District Judge Amy Berman Jackson last month ordered Klayman to show why the claims against the judges shouldn't be dismissed on the grounds of judicial immunity, which typically protects judges from suits targeting actions in their official capacity. In a filing (//www.courtlistener.com/recap/gov.uscourts.dcd.227589/gov.uscourts.dcd.227589.10.0.pdf) earlier this month, Klayman argued prior rulings show that judicial immunity is not absolute and his claim should be allowed to proceed because he's only seeking a lift on his temporary suspension.

Lawyers with the D.C. Attorney General's Office this week filed notices of appearance on behalf of the judges named in the suit. On Tuesday, Jackson ordered them to also brief the judicial immunity issue, saying she "would benefit from briefing from both sides."

The repeated lawsuits were the basis for sanctions from a judge last fall, in a lawsuit targeting Porter and the bar's Office of Disciplinary Counsel. Judge Heidi Pasichow of the D.C. Superior Court found in October (https://drive.google.com/file/d/1OTWwSjlLaRRiX5OHQyVhj2qQDpp5RoS1/view?usp=sharing) that Klayman was "on notice that his claims within his complaint are not permitted by existing law," but filed his lawsuit anyway. She ordered him to pay court costs in the case, but declined to order him to pay attorneys' fees. Klayman has appealed the ruling, and the case is pending before the D.C. Court of Appeals.

---

**Copyright 2021. ALM Media Properties, LLC. All rights reserved.**

NOT A CERTIFIED COPY

**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I.    CASE STYLE

IN THE CIRCUIT COURT OF THE <u>FIFTEENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>PALM BEACH</u>   COUNTY, FLORIDA

<u>Larry Klayman</u>
Plaintiff

Case # _____
Judge _____

vs.

<u>ALM Media LLC, Jacqueline Thomsen</u>
Defendant

### II.    AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☐  $8,001 - $30,000
☐  $30,001- $50,000
☐  $50,001- $75,000
☐  $75,001 - $100,000
☒  over $100,000.00

### III.    TYPE OF CASE    (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 1 -

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
     ☐ Business governance
     ☐ Business torts
     ☐ Environmental/Toxic tort
     ☐ Third party indemnification
     ☐ Construction defect
     ☐ Mass tort
     ☐ Negligent security
     ☐ Nursing home negligence
     ☐ Premises liability—commercial
     ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
     ☐ Commercial foreclosure
     ☐ Homestead residential foreclosure
     ☐ Non-homestead residential foreclosure
     ☐ Other real property actions

☐Professional malpractice
     ☐ Malpractice—business
     ☐ Malpractice—medical
     ☐ Malpractice—other professional
☒ Other
     ☐ Antitrust/Trade regulation
     ☐ Business transactions
     ☐ Constitutional challenge—statute or ordinance
     ☐ Constitutional challenge—proposed amendment
     ☐ Corporate trusts
     ☐ Discrimination—employment or other
     ☐ Insurance claims
     ☐ Intellectual property
     ☒ Libel/Slander
     ☐ Shareholder derivative action
     ☐ Securities litigation
     ☐ Trade secrets
     ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
   ☐ Residential Evictions
   ☐ Non-residential Evictions
☐ Other civil (non-monetary)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.      REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V.       NUMBER OF CAUSES OF ACTION:** [    ]
(Specify)

   6

**VI.     IS THIS CASE A CLASS ACTION LAWSUIT?**
   ☐ yes
   ☒ no

**VII.    HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
   ☒ no
   ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.   IS JURY TRIAL DEMANDED IN COMPLAINT?**
   ☒ yes
   ☐ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s/ Larry E. Klayman                    Fla. Bar # 246220
                 Attorney or party                          (Bar # if attorney)

Larry E. Klayman                                     04/06/2021
  (type or print name)                              Date

NOT A CERTIFIED COPY

- 3 -

Filing # 124358107 E-Filed 04/08/2021 03:35:59 PM

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT,
**IN AND FOR PALM BEACH COUNTY, FLORIDA**

CASE NO: 502021CA004470XXXXMB
DIVISION: _____

LARRY KLAYMAN, ESQ.

_____
PLAINTIFF(S)

VS.

ALM MEDIA LLC, et al

_____
DEFENDANT(S)

**SUMMONS**
**(PERSONAL SERVICE ON A NATURAL PERSON)**

TO DEFENDANT(S):                    **ALTERNATE ADDRESS:**

Jacqueline Thomsen                    105 S. Narcissus Ave, West Palm Beach FL 33401

_____          _____

_____          _____

_____          _____

**IMPORTANT**

A LAWSUIT HAS BEEN FILED AGAINST YOU.  YOU HAVE **20 CALENDAR DAYS** AFTER THIS SUMMONS IS SERVED ON YOU TO FILE A WRITTEN RESPONSE TO THE ATTACHED COMPLAINT WITH THE CLERK OF THIS COURT.  A PHONE CALL WILL NOT PROTECT YOU.  YOUR WRITTEN RESPONSE, INCLUDING THE CASE NUMBER GIVEN ABOVE AND THE NAMES OF THE PARTIES, MUST BE FILED IF YOU WANT THE COURT TO HEAR YOUR SIDE OF THE CASE.  IF YOU DO NOT FILE YOUR RESPONSE ON TIME, YOU MAY LOSE THE CASE, AND YOUR WAGES, MONEY, AND PROPERTY MAY THEREAFTER BE TAKEN WITHOUT FURTHER WARNING FROM THE COURT.  THERE ARE OTHER LEGAL REQUIREMENTS.  YOU MAY WANT TO CALL AN ATTORNEY RIGHT AWAY.  IF YOU DO NOT KNOW AN ATTORNEY, YOU MAY CALL AN ATTORNEY REFERRAL SERVICE OR A LEGAL AID OFFICE (LISTED IN THE PHONE BOOK).

IF YOU CHOOSE TO FILE A WRITTEN RESPONSE YOURSELF, AT THE SAME TIME YOU FILE YOUR WRITTEN RESPONSE TO THE COURT YOU MUST ALSO MAIL OR TAKE A COPY OF YOUR WRITTEN RESPONSE TO THE PLAINTIFF OR PLAINTIFF(S) ATTORNEY NAMED BELOW:

Larry Klayman, Esq., 7050 W. Palmetto Park Rd, Boca Raton FL, 33433, 561-558-5336

_____

_____

**"If you are a <u>person with a disability</u> who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Tammy Anton, Americans with Disabilities Act Coordinator, Palm Beach County Courthouse, 205 North Dixie Highway West Palm Beach, Florida 33401; telephone number (561) 355-4380 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711."**

NOT A CERTIFIED COPY

IMPORTANTE

USTED HA SIDO DEMANDADO LEGALMENTE.  TIENE 20 DIAS CONTADOS A PARTIR DEL RECIBO DE ESTA NOTIFICACION PARA CONTESTAR POR ESCRITO LA DEMANDA ADJUNTA Y PRESENTARLA ANTE ESTE TRIBUNAL. UNA LLAMADA TELEFONICA NO LO PROTEGERA.  SI USTED DESEA QUE EL TRIBUNAL CONSIDERE SU DEFENSA, DEBE PRESENTAR SU RESPUESTA POR ESCRITO, INCLUYENDO EL NUMBERO DEL CASO Y LOS NOMBRES DE LAS PARTES INTERESADAS.  SI USTED NO CONTESTA LA DEMANDA A TIEMPO, PUDIESE PERDER EL CASO Y PODRIA SER DESPOJADO DE SUS INGRESOS Y PROPIEDADES O PRIVADO DE SUS DERECHOS, SIN PREVIO AVISO DEL TRIBUNAL.  EXISTEN OTROS REQUISITOS LEGALES.  SI LO DESEA, PUEDE USTED CONSULTAR A UN ABOGADO INMEDIATAMENTE.  SI NO CONOCE A UN ABOGADO, PUEDE LLAMAR A UNA DE LAS OFICINAS DE ASISTENCIA LEGAL QUE APARECEN EN LA GUIA TELEFONICA.

SI DESEA RESPONDER A LA DEMANDA POR SU CUENTA, AL MISMO TIEMPO EN QUE PRESENTA SU RESPUESTA ANTE EL TRIBUNAL, DEBERA USTED ENVIAR POR CORREO O ENTREGAR UNA COPIA DE SU RESPUESTA A LA PERSONA DENOMINADO ABAJO COMO PLAINTIFF/PLAINTIFF(S) ATTORNEY (DEMANDANTE O ABOGADO DEL DEMANDANTE):

_____

_____

**"Si usted es una <u>persona minusválida</u> que necesita algún acomodamiento para poder participar en este procedimiento, usted tiene derecho, sin tener gastos propios, a que se le provea cierta ayuda.    Tenga la amabilidad de ponerse en contacto con Tammy Anton, 205 N. Dixie Highway, West Palm Beach, Florida 33401; teléfono número (561) 355-4380, por lo menos 7 días antes de la cita fijada para su comparecencia en los tribunales, o inmediatamente después de recibir esta notificación si el tiempo antes de la comparecencia que se ha programado es menos de 7 días; si usted tiene discapacitación del oído o de la voz, llame al 711."**

IMPORTANT

DES POURSUITES JUDICIARIES ONT ETE ENTREPRISES CONTRE VOUS.  VOUS AVEZ 20 JOURS CONSECUTIFS A PARTIR DE LA DATE DE L@ASSIGNATION DE CETTE CITATION POUR DEPOSER UNE REPONSE ECRITE A LA PLAINTE CI-JOINTE AUPRES DE CE TRIBUNAL.  UN SIMPLE COUP DE TELEPHONE EST INSUFFISANT POUR VOUS PROTEGER; VOUS ETES OBILIGE DE DEPOSER VOTRE RESPONSE ECRITE, AVEC MENTION DU NUMERO DE DOSSIER CI-DESSUS ET DU NOM DES PARTIES NOMMEES ICI, SI VOUS SOUHAITEZ QUE LE TRIBUNAL ENTENDE VOTRE CAUSE.  SI VOUS NE DEPOSEZ PAS VOTRE REPONSE ECRITE DANS LE RELAI REQUIS, VOUS RISQUEZ DE PERDRE LA CAUSE AINSI QUE VOTRE SALAIRE, VOTRE ARGENT, ET VOS BIENS PEUVENT ETRE SAISIS PAR LA SUITE, SANS AUCUN PREAVIS ULTERIEUR DU TRIBUNAL.  IL Y A D@AUTRES OBLIGATIONS JURIDIQUES ET VOUS POUVEZ REQUERIR LES SERVICES IMMEDIATS D@UN AVOCAT.  SI VOUS NE CONNAISSEZ PAS D@AVOCATS OU A UN BUREAU D@ASSISTANCE JURIDIQUE (FIGURANT A L@ANNUAIRE DE TELEPHONES).

SI VOUS CHOISISSEZ DE DEPOSER VOUS-MEME UNE REPONSE ECRITE, IL VOUS FAUDRA EGALEMENT, EN MEME TEMPS QUE CETTE FORMALITE, FAIRE PARVENIR OU EXPEDIER UNE COPIE DE VOTRE REPONSE ECRITE AU ≥PLAINTIFF/PLAINTIFF(S) ATTORNEY@ (PLAIGNANT OU A SON AVOCAT) NOMME CI-DESSOUS:

_____

_____

"**Si ou se yon <u>moun ki enfim</u> ki bezwen akomodasyon pou w ka patisipe nan pwosedi sa, ou kalifye san ou pa gen okenn lajan pou w peye, gen pwovizyon pou jwen kèk èd. Tanpri kontakte Tammy Anton, kòòdonatè pwogram Lwa pou ameriken ki Enfim yo nan Tribinal Konte Palm Beach la ki nan 205 North Dixie Highway, West Palm Beach, Florida 33401; telefòn li se (561) 355-4380 nan 7 jou anvan dat ou gen randevou pou parèt nan tribinal la, oubyen imedyatman apre ou fin resevwa konvokasyon an si lè ou gen pou w parèt nan tribinal la mwens ke 7 jou; si ou gen pwoblèm pou w tande oubyen pale, rele 711.**"

THE STATE OF FLORIDA:

TO EACH SHERIFF OF THE STATE: YOU ARE COMMANDED TO SERVE THIS SUMMONS AND A COPY OF THE COMPLAINT IN THIS LAWSUIT ON THE ABOVE NAMED DEFENDANT(S).

DATED: **Apr 09 2021**

**JOSEPH ABRUZZO**
~~Sharon R. Bock,~~
**Clerk of the Circuit Court**

BY: _____
AS DEPUTY CLERK   **JOSIE LUCCE**

NOT A CERTIFIED COPY

Filing # 125977472 E-Filed 04/30/2021 06:42:15 PM

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT IN
AND FOR PALM BEACH COUNTY,
FLORIDA

LARRY KLAYMAN, ESQ.                         CASE NO.: 50-2021-CA-004470

      Plaintiff,

v.

ALM MEDIA LLC *d/b/a* THE NATIONAL
LAW JOURNAL and
JACQUELINE THOMSEN (an individual),

      Defendants,

_____/

### DEFENDANTS' MOTION FOR EXTENSION OF TIME
### TO RESPOND TO COMPLAINT

Defendants ALM Media LLC *d/b/a* The National Law Journal ("ALM") and Jacqueline

Thomsen ("Ms. Thomsen") (collectively, "Defendants") file this *unopposed* motion for an

extension of time, until June 17, 2021, to respond to Plaintiff's Complaint.

    1.     On April 6, 2021, Plaintiff filed his Complaint against Defendants, which consists

of thirty-three (33) pages (including exhibits), and asserts against each Defendant causes of action

for defamation, defamation per se, and defamation by implication, for a total of six (6) causes of

action.

    2.     On April 8, 2021, the Clerk of Courts issued the Summons as to Defendants.

    3.     On April 12, 2021, Ms. Thomsen was served with process.

    4.     On April 12, 2021, ALM was served with process.

    5.     The undersigned's law firm was recently engaged by Defendants.

    6.     Given numerous substantial competing professional commitments, Defendants

require additional time to study their defenses in order to adequately respond to the Complaint.

7.      The undersigned consulted the matter with Plaintiff, who consented to a forty-five (45) day extension of time for Defendants to respond to the Complaint, counting from May 3, 2021, the due date for Ms. Thomsen, who was served on April 12, 2021, to respond.

8.      The new due date for both Defendants to file their response(s) would fall on June 17, 2021.

9.      The requested extension is not sought for purposes of delay and will not unduly prejudice Plaintiff, who has graciously consented to Plaintiffs' request.

**WHEREFORE**, Defendants respectfully request an extension, until June 17, 2021, to file their response(s) to Plaintiff's Complaint.


Dated:  April 30, 2021                              Respectfully submitted,

                                                   **PRYOR CASHMAN LLP**
                                                   201 South Biscayne Blvd., 27th Floor
                                                   Miami, Florida 33131
                                                   Tel. (786) 582-3011

                                                   By: /s/ *Hans H. Hertell*
                                                   Hans H. Hertell
                                                   Florida Bar No. 71969
                                                   hhertell@pryorcashman.com
                                                   ksuarez@pryorcashman.com

                                                   *Counsel for Defendant ALM Media LLC*
                                                   *d/b/a The National Law Journal and*
                                                   *Jacqueline Thomsen*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed electronically with the Florida Portal on April 30, 2021 and served on *pro se plaintiff* via email and U.S. mail as follows:

Larry Klayman, Esq.
7050 W. Palmetto Park Road
Boca Raton, Florida 33433
leklayman@gmail.com

/s/ *Hans H. Hertell*
Hans H. Hertell, Esq.